The document below is hereby signed.

Signed: June 5, 2019



*S. Martin Teel, Jr.*
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| MAX E. SALAS, | ) | Case No. 18-00260 |
| | ) | (Chapter 11) |
| Debtor. | ) | |
| | ) | Not for publication in |
| | ) | West's Bankruptcy Reporter. |

MEMORANDUM DECISION AND ORDER DENYING (1) MOTION
FOR STAY PENDING APPEAL OF THE COURT'S MEMORANDUM
DECISION AND ORDER RE OBJECTION TO HOMESTEAD EXEMPTION
AND (2) MOTION FOR EXPEDITED HEARING ON THE MOTION FOR STAY

As plaintiffs in the Superior Court of the District of Columbia, certain creditors ("Plaintiffs")[1] recovered judgments against the debtor, Max Salas ("Max") and his son, Len Salas ("Len"). Len is a debtor in his own bankruptcy case, Case No. 18-02662 in the United States Bankruptcy Court for the Middle District of Tennessee. The Plaintiffs have taken an appeal from this court's *Memorandum Decision and Order re Objection to Homestead Exemption* (Dkt. No. 108 entered on September 25, 2018),

---

[1] The Plaintiffs are Nicolaas J. Brekelmans and Gail Gregory Brekelmans, Trustees of the Estate of Nina Brekelmans and Michael McLoughlin and Martha Johnson, Trustees of the Estate of Patrick McLoughlin.

ruling that Max's principal residence belongs to Max and that he has properly claimed it to be exempt property under 11 U.S.C. § 522.  With respect to that ruling, the Plaintiffs filed on May 28, 2019, a motion for a stay pending appeal ("Stay Motion") (Dkt. No. 195), and a motion ("Motion to Shorten Time") (Dkt. No. 196), seeking to shorten the time for a response to the Stay Motion and seeking an expedited hearing on June 7, 2019, on the Stay Motion.

I will deny the Stay Motion and deny the Motion to Shorten Time as moot.  The Plaintiffs have shown no need for a stay pending appeal, as a stay would serve no purpose.  Nor have the Plaintiffs demonstrated cause for belatedly waiting until May 28, 2019, to file their Stay Motion and seeking an expedited hearing on the Stay Motion.

I

In this bankruptcy case, Max claimed as exempt the entire value of his interest in real property (the "Property") that he uses as his principal residence.[2]  The Plaintiffs objected to that exemption claim, asserting that Len, the owner of record in the D.C. land records, is the owner of the Property, not Max.  As creditors of both Max and Len, they would fare better if Len is the owner of the Property because, in Len's bankruptcy case, Len

---

[2] D.C. Code § 15-501(a)(14) permits a debtor to exempt the entire value of his interest in property that is his principal residence.

is not entitled to claim an exemption for the full value of whatever interest he has in the Property.

During the pendency of the objection to claim of exemption in the Bankruptcy Court, Len was serving as a debtor in possession under 11 U.S.C. § 1101 in his own bankruptcy case, which was then pending in Chapter 11 of the Bankruptcy Code. He participated in the trial of the objection to the exemption claim, and did not seek to assert that the Property belongs to him and is thus property of his bankruptcy estate. In the *Memorandum Decision and Order re Objection to Homestead Exemption*, I found that Max owns the Property pursuant to an unrecorded transfer and overruled the Plaintiffs' objection to Max's claim of exemption. The Plaintiffs have pursued an appeal of that ruling, and it is that ruling that the Plaintiffs seek to stay.

On December 26, 2018, Len's bankruptcy case was converted to Chapter 7 of the Bankruptcy Code. Michael Gigandet, the Chapter 7 trustee in that case, is administering Len's bankruptcy estate.

Any rights of Len in the Property are property of Len's bankruptcy estate. Moreover, if Gigandet were to bring in Len's bankruptcy case an avoidance action under 11 U.S.C. § 544, 545, 547, 548, 549, or 553 and were to succeed in avoiding the transfer of the Property to Max, that would result in Gigandet being entitled to recover the Property from Max under 11 U.S.C.

§ 550(a) (even if this court's ruling that Max owned the Property were upheld on appeal). Pursuant to 11 U.S.C. § 541(a)(3), the Property, upon being recovered by Gigandet under § 550(a), would be property of Len's bankruptcy estate to be administered for the benefit of Len's creditors.

Gigandet is under the statutory command of 11 U.S.C. § 704(a)(1) to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest." On April 10, 2019, Gigandet filed a *Trustee's Motion to Sell Property* in Len's bankruptcy case. The *Trustee's Motion to Sell Property* seeks to sell:

> Any and all claims and interests of the bankruptcy estate or the Chapter 7 trustee to the [Property]. Such claims and interests being sold include, but are not limited to, the Chapter 7 trustee's rights to pursue a cause of action against Max Salas under the trustee's avoidance powers pursuant to Bankruptcy Code Sections 544, 545, 547, 548, 549, or 553.

Max's older son, Ron Salas, is the proposed purchaser under the *Trustee's Motion to Sell Property*, but the sale is subject to any higher bids made. Gigandet's *Trustee's Motion to Sell Property* appears to have precipitated the filing of the Stay Motion.

Both the United States Trustee and the Plaintiffs have objected in Len's bankruptcy case to the proposed sale, noting that Ron is an insider. The Plaintiffs object to the proposed sale on additional grounds, including on the basis that a sale

4

would be premature because the value of Len's bankruptcy estate's interest in the Property could be dramatically changed if the Plaintiffs prevail in their current appeal in the District Court here. However, it is for the bankruptcy court in Len's bankruptcy case, not this court, to rule on the *Trustee's Motion to Sell Property* and the objections thereto.

If Len, not Max, is determined to be the owner of the Property, Gigandet could proceed to sell the Property itself as property of Len's bankruptcy estate, but that would require an initial determination that, contrary to this court's *Memorandum Decision and Order re Objection to Homestead Exemption*, Len, not Max, owns the Property.[3] Gigandet could also sell the Property if he avoids the transfer to Max. Instead of incurring the delay and risks of litigation entailed in any attempt to demonstrate that Len owns the Property, or to avoid the transfer to Max, Gigandet has elected to simply sell whatever rights Len has in the Property and whatever avoidance rights Gigandet has, letting the sales process determine what is the value to Len's bankruptcy estate of such rights. As creditors of Len's bankruptcy estate, holding unsecured claims against that estate, the Plaintiffs are free to continue to press their objection to Gigandet's *Trustee's*

---

[3] Gigandet would be entitled to rely in that regard on any ruling on the appeal to the District Court here in favor of the Plaintiffs, whether by intervening or by simply awaiting the outcome. Or he might attempt to separately sue Max to establish that Len, not Max, owns the Property.

*Motion to Sell Property*.[4] If they can establish that the sale is not in the best interests of parties in interest in Len's bankruptcy case, the U.S. Bankruptcy Court for the Middle District of Tennessee will not approve the sale.

II

The Stay Motion makes no sense. Even if this court stayed the *Memorandum Decision and Order re Objection to Homestead Exemption*, Gigandet, as trustee in Len's bankruptcy case, is free to press forward with attempting to obtain court authorization for a sale of whatever interest Len has in the Property. Gigandet's sales efforts will not be altered by this court's granting the Stay Motion, and thus the Stay Motion serves no purpose.

It is for the bankruptcy court in Len's case to decide whether to approve a sale of whatever interest Len's bankruptcy estate has in the Property. The Plaintiffs will be protected by their rights in Len's bankruptcy case to object to a sale that is

---

[4] Max and Len filed the petitions commencing their bankruptcy cases on April 18, 2018, before the entry of final, enforceable, and appealable judgments in the Superior Court action. See *Memorandum Decision and Order re Objection to Homestead Exemption* at 27 n.8. Even if enforceable judgments were later entered, the automatic stay of 11 U.S.C. § 362(a) has barred recording the judgments in order to give rise to judgment liens. Accordingly, the plaintiffs have no judgment liens on real property of Max or on real property of Len. It follows that the plaintiffs' rights to go against the Property will be limited to their rights as unsecured creditors in the two bankruptcy cases.

6

not in the best interest of parties in interest in Len's bankruptcy case. It is not the role of this court to address those rights they have in Len's bankruptcy case.

If Len's interest in the Property *is* sold pursuant to the *Trustee's Motion to Sell Property* in Len's bankruptcy case, the purchaser will be the entity with the right to attempt to demonstrate that Len, not Max, was the owner of the Property, and the Plaintiffs will no longer have any stake in pursuing that issue. Instead, the Plaintiffs would look to the proceeds of the sale for making a recovery on their claims. That outcome would not be a reason to grant the Stay Motion. Instead, the Plaintiffs' focus should be on assuring maximization of the sale proceeds from any approved sale by Gigandet of Len's estate's interest in the Property (including any right to show that Len is the true owner of the Property and any rights of Gigandet as trustee to avoid the transfer to Max).

This court cannot stay Gigandet's efforts in Len's bankruptcy case to sell whatever rights Len has in the Property. It is to the U.S. Bankruptcy Court for the Middle District of Tennessee that the Plaintiffs must turn to seek disapproval of any sale unfavorable to their interests, and to obtain a stay of any sale order which they view as unfavorable to them and that they consequently seek to appeal.

The Plaintiffs point to 11 U.S.C. § 363(m), which provides:

7

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

Section 363(m) might result in the Plaintiffs not being able to succeed in an appeal challenging an order authorizing the sale of Len's interest in the Property, but that is merely a reflection of the rights a purchaser will have under the Bankruptcy Code incident to a sale in Len's bankruptcy case. The existence of § 363(m) has no bearing on whether this court should grant the Stay Motion.

III

This court entered the *Memorandum Decision and Order re Objection to Homestead Exemption* on September 25, 2018, eight months before the Plaintiffs filed their Stay Motion. Even if the Gigandet's *Motion to Sell Property* were deemed to be an event warranting seeking a stay pending the appeal of this court's *Memorandum Decision and Order re Objection to Homestead Exemption*, Gigandet filed that *Trustee's Motion to Sell Property* in Len's bankruptcy case on April 10, 2019, fifty-six days ago, with notice to all creditors. Not until May 28, 2019, forty-eight days after the filing of Gigandet's *Trustee's Motion to Sell Property* did the Plaintiffs file their Stay Motion and the Motion to Shorten Time, with only nine days left before the

8

requested hearing of June 7, 2019, on the Stay Motion. The Plaintiffs have not justified their delay in filing the Stay Motion and the Motion to Shorten Time. The emergency to which they point — a sale hearing in Len's case on June 11, 2019 — is a result of their waiting for many weeks to file and seek a hearing on the Stay Motion. The court and Max would be entitled to have the Stay Motion be addressed in the usual fashion instead of on any expedited basis necessitated by the Plaintiffs' own unwarranted delay. In any event, the need for a hearing is moot because the Stay Motion is being denied as failing to establish cause for granting a stay. Granting a stay would have no impact on whether a sale results pursuant to the hearing in Len's bankruptcy case on June 11, 2019.

IV

It is thus

ORDERED that the motion titled:

*Motion of the Appellants. Nicolaas J. Brekelmans and Gail Gregory Brekelmans, Trustees of the Estate of Nina Brekelmans and Michael McLoughlin and Martha Johnson, Trustees of the Estate of Patrick McLoughlin, to Stay this Court's Memorandum and Order Dated September 25, 2018*

(Dkt. No. 195) is DENIED. It is further

ORDERED that the motion titled:

*Motion of Nicolaas J. Brekelmans and Gail Gregory Brekelmans, Trustees of the Estate of Nina Brekelmans and Michael McLoughlin and Martha Johnson, Trustees of the Estate of Patrick McLoughlin, to Shorten the Time for*

9

*Responding to the Movants' Motion to Stay the Judgment and Order of the Bankruptcy Court, Dated September 25, 2018 and to Set this Matter for Hearing on an Expedited Basis on June 07, 2019 at 10:30 AM*

(Dkt. No. 196) is DENIED.

                                                     [Signed and dated above.]

Copies to: E-recipients of filings.