The document below is hereby signed.

Signed: October 13, 2020



_S. Martin Teel, Jr._
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

In re                          )
                               )
MAX E. SALAS,                  )    Case No. 18-00260
                               )    (Chapter 11)
            Debtor.            )

<u>MEMORANDUM DECISION AND ORDER RE MOTION FOR RECONSIDERATION</u>

This addresses the _Motion for Reconsideration_[1] filed on

March 6, 2020, by Nicolaas J. Brekelmans and Gail Gregory

Brekelmans, Trustees of the Estate of Nina Brekelmans, and

Michael McLoughlin and Martha Johnson, Trustees of the Estate of

Michael Patrick McLoughlin (collectively "the judgment

---

[1] The full title of the _Motion for Reconsider_ (Dkt. No.
321) is:

> _Motion for Reconsideration Based Upon the Order Remanding
> the District Court Appeal of This Court's Memorandum and
> Order (September 25, 2018) Overruling the Movants'
> Objections to the Debtor's Claim of a Homestead Exemption
> of the Property Located at 1610 Riggs Place, NW,
> Washington, DC and Request for a Hearing Thereon._ (Dkt.
> No. 321) filed on March 6, 2020, by Nicolaas J.
> Brekelmans and Gail Gregory Brekelmans, Trustees of the
> Estate of Nina Brekelmans ("Brekelmans Plaintiffs"), and
> Michael McLoughlin and Martha Johnson, Trustees of the
> Estate of Michael Patrick McLoughlin ("McLoughlin
> Plaintiffs") (collectively "the judgment creditors").

creditors").  The *Motion for Reconsideration* seeks to have the court reconsider its *Memorandum Decision and Order re Objection to Homestead Exemption* entered seventeen months previously on September 25, 2018 (Dkt. No. 108) ("*Homestead Decision*").[2]  The judgment creditors assert that there is new evidence demonstrating that the debtor in this case, Max Salas ("Max"), paid no consideration for the *Quitclaim Deed* from his youngest son, Len Salas ("Len").[3]  The *Homestead Decision* found that the *Quitclaim Deed* vested Max with title to his homestead (the "Property") located at 1610 Riggs Place, NW, Washington, D.C., and overruled the judgment creditors' objection to Max's exemption of the Property, an objection asserting that Len, not Max, owns the Property.

I will deny the *Motion for Reconsideration*.  Relief under Fed. R. Civ. P. 60(a) is unavailable because the *Motion for Reconsideration* challenges the substance of the *Homestead Decision* instead of some clerical error.  Relief under Fed. R. Civ. P. 60(b) was sought untimely: relief under Rule 60(b)(1) and (2) was not sought within one year after entry of the *Homestead Decision* and thus is time-barred under Fed. R. Civ. P. 60(c)(1), and relief under Rule 60(b)(6) was not sought for seventeen

---

[2]  The *Homestead Decision* was signed on September 24, 2018, but not entered until the next day.

[3]  I will refer to the debtor and his family members by their first names for ease of discussion.

months, which was not within a reasonable time as required by
Rule 60(c)(1).  The pendency of an appeal of the *Homestead
Decision* and the filing in the appeal of a motion to remand to
the Bankruptcy Court had no effect on the timeliness requirements
of Rule 60(c)(1) regarding Rule 60(b) motions.  In any event,
even disregarding the untimeliness in seeking Rule 60(b) relief,
the *Motion for Reconsideration* presents inadequate grounds for
relief from the *Homestead Decision* (including, for example, the
fact that Rule 60(b)(6) relief is barred because it seeks relief
on grounds already covered by Rules 60(b)(1) and 60(b)(2)).
Finally, because relief could have been sought under Rule 60(b),
the *Motion for Reconsideration* does not present grounds as an
independent action under Fed. R. Civ. P. 60(d)(1) that warrant
relief.

I

PROCEDURAL HISTORY

A.  Events Leading to the *Homestead Decision*

On June 3, 2015, Michael Patrick McLoughlin and Nina
Brekelmans, two roomers at the Property, were killed in a fire at
the Property.  The judgment creditors are the parents of
McLoughlin and Brekelmans.  As personal representatives of their
children's estates they brought actions in the Superior Court of
the District of Columbia (respectively the McLoughlin plaintiffs
in Case No. 2015 CA 008054 B and the Brekelmans plaintiffs in

Case No. 2015 CA 008061 B), pursuing wrongful death and survivorship claims against both Max and his youngest son, Len. On April 4, 2018, the McLoughlin plaintiffs and the Brekelmans plaintiffs obtained jury verdicts in the Superior Court of $7.7 million and $7.5 million, respectively, against Max and Len, jointly and severally.  On April 18, 2018, Max filed a petition commencing this case under Chapter 11 of the Bankruptcy Code (11 U.S.C.) and Len filed a petition in the United States Bankruptcy Court for the Middle District of Tennessee (Case No. 3:18-bk-02662) commencing his own case under chapter 11 of the Bankruptcy Code.

Max claimed an exemption on the Property pursuant to the District of Columbia's homestead exemption found in D.C. Code § 15-501(a)(14).  The judgment creditors timely objected to that exemption, asserting that Len, not Max, owned the Property.  The Bankruptcy Court held a trial on the objection to the homestead exemption for three days (on August 23, 24, and 25, 2018).  The *Homestead Decision*, entered on September 25, 2018, confirmed that Max possessed the full legal and equitable interest to the Property and overruled the objection to the homestead exemption. The *Motion for Reconsideration* was filed more than seventeen months later on March 6, 2020.

4

B.   Pertinent Aspects of the *Homestead Decision* and in
Particular the Issue of Consideration for the July 6,
2010 Transfer of Title to Max

The *Homestead Decision* included the following findings of
fact.  Max and his wife, Vickie, as joint owners of the Property,
entered to a divorce agreement whereby Vickie would be paid for
her interest via a loan secured by the Property but with Len
being the borrower (because Max had a bad credit history).  The
intent of the divorce agreement was accomplished on April 16,
2007, by Vickie transferring her interest to Max, and then Max
transferring the Property to Len (for a recited consideration of
$10), who then obtained a loan, secured by deed of trust on the
Property, to fund the payment to Vickie under the divorce
agreement.  Even though Len was the owner of record in the land
records, Len and Max agreed that the Property would, in
actuality, remain Max's home.  Len treated Max as the real owner
of the Property.  Max and Len agreed that Max would make the
mortgage payments even though only Len was an obligor on the note
secured by the deed of trust.  Over the years, Max alone made
monthly mortgage payments, occasionally missing payments.  Len
made none of the payments, even though he received communications
from SunTrust whenever a payment was missed.  Similarly, using
bank accounts over which he had control, Max has paid for all
other expenses associated with the Property, including amounts
incurred for utilities, real property taxes, insurance,

5

maintenance, and general upkeep.  Accounts for expenses associated with the Property have been established in Max's name, including all electric and water utility accounts, cable and internet accounts, and a Deluxe-Home insurance policy for the Property with Encompass Insurance Company of America.

On July 6, 2010, Len and Max executed an *Irrevocable Trust Agreement* and a *Quitclaim Deed* attempting to transfer ownership of the Property to a trust of which Max would be both the trustee and the beneficiary.  The trust was invalid (for reasons explored in the *Homestead Decision*).  However, in the District of Columbia, "the conveyance of property through an invalid trust results in a resulting trust, unless there is consideration, in which case, the legal and beneficial rights are conveyed to the intended beneficiary of the conveyance."  *Homestead Decision* at 54 (citations omitted).

The *Homestead Decision* then addressed the issue of whether there had been consideration.  The *Quitclaim Deed* recited that the transfer was made by Len "for good consideration and for the sum of $100.00 paid by [Max], the receipt whereof is hereby acknowledged."  The *Homestead Decision* stated:

> The court finds that $100 was valuable consideration, even though $100 is a nominal amount when considered against the value of the Property, because Len paid consideration of $10 when Max deeded the Property to Len in 2007.  In effect, Len purchased the Property for $10 in 2007 and sold the Property for $100 three years later in 2010.

Additionally, while the mortgage was in Len's name, Max made all payments on the mortgage, and there was an agreement between Len and Max that Max would take Len's name off the mortgage when Max was able to refinance the Property on his own credit.   Moreover, Max paid all bills, taxes, and other expenses related to the Property, and maintained and kept up the Property. Len put no investment into the Property, and got more out of the Property than he put into it.   **Accordingly, the court finds that there was valuable consideration.**

*Homestead Decision* at 54-55 (emphasis added).

C.   The Appeal and the Disposition of the Judgment Creditors' District Court Motion Seeking to Supplement the Record With Three Transcripts or to Remand to the Bankruptcy Court for Consideration of the Three Transcripts

On October 8, 2018, the judgment creditors timely filed a notice of appeal regarding the *Homestead Decision*, and the appeal was docketed in the District Court as Civil Action No. 18-cv-2318 (the "Appeal").   Full briefing of the issues presented in the Appeal was completed in February 2019.   (See Appeal Dkt. Nos. 6, 8, and 11).

Meanwhile, after entry of the *Homestead Decision*, the judgment creditors were of the view that they had not been given fair notice before or during the homestead exemption trial that an issue regarding the ownership of the Property would be whether Max had provided consideration for the transfer under the *Quitclaim Deed*.   In order to pursue the issue of consideration in more depth, the judgment creditors could have filed a motion seeking a new trial under Fed. R. Civ. P. 59(a), or a motion for relief from the *Homestead Decision* under Fed. R. Civ. P. 60(b)(1)

7

based on excusable neglect, or a motion to depose Max and Len on the consideration issue pending the appeal.  They did not need to obtain evidence from Max or Len before filing such a motion. Upon filing such a motion, they could have asked the District Court to put the appeal on hold pending disposition of the motion.

Instead of acting promptly, and availing themselves of their existing remedies in this bankruptcy case, **Max's bankruptcy case**, they decided they would attempt to obtain further testimony from Max and Len in **Len's bankruptcy case** to buttress their positions regarding the homestead exemption.  They examined Max and Len in Len's own bankruptcy case, obtaining three transcripts of testimony months after the *Homestead Decision* was entered.

To elaborate, on December 12 and 13, 2018, a hearing was held in Len's bankruptcy case regarding a motion to convert Len's case from Chapter 11 to Chapter 7 of the Bankruptcy Code or, alternatively, to appoint a Chapter 11 trustee.[4]  Max and Len testified at that hearing.  On the issue of consideration for the transfer incident to the trust documents (consisting of the *Irrevocable Trust Agreement* and a *Quitclaim Deed*), Len testified as follows on December 13, 2018:

Q When you -- when your brother created the trust

---

[4]  On December 20, 2018, an order was entered converting Len's bankruptcy case from Chapter 11 to Chapter 7 of the Bankruptcy Code.

documents, did your father pay any money to you?

A No.

Q Did he give you any other consideration? Did he

give you any property, any personal property, or

anything like that?

A No.

Tr. (Dkt. No. 370-2) at 68-69.  The transcripts of the testimony

of Max and Len on December 12 and 13, 2018, otherwise contain

testimony that merely elaborated on subjects as to which Max and

Len had already testified in the homestead exemption trial.[5]

Despite learning on December 13, 2018, that $100 had *not*

been paid at the time the *Quitclaim Deed* was executed,[6] the

judgment creditors neglected for more than a year after December

13, 2018, to seek relief in the Bankruptcy Court based on that

fact.  Their *Motion for Reconsideration* was not filed in the

Bankruptcy Court until March 6, 2020, fourteen months and

eighteen days later.  A transcript of Len's testimony of December

---

[5]  For example, Max testified at the trial regarding his
being the only person making payments on the Property's mortgage
both before and after the transfer under the *Quitclaim Deed*.  The
record reflected that sometimes Max did not make monthly mortgage
payments.  That issue of whether all monthly mortgage payments
were made was rehashed in the examination of Max on December 12,
2018.

[6]  As noted earlier, the recitation in the *Quitclaim Deed*
was more extensive than that, stating that the transfer was "for
good consideration and for the sum of $100.00 paid by [Max], the
receipt whereof is hereby acknowledged."

13, 2018, was not needed to seek Rule 60(b)(2) relief in the
Bankruptcy Court.  Max could not dispute that Len had testified
on December 13, 2018, that he did not pay Len anything when the
trust documents were created, and if he did raise such a dispute,
transcripts could have then been furnished to the Bankruptcy
Court.  Even if a transcript of that testimony was necessary
before a Rule 60(b)(2) motion could be filed, the judgment
creditors engaged in unreasonable delay by not ordering a
transcript until February 1, 2019.  Nothing in the record
explains that 50-day delay in ordering the transcript.

The transcripts of Max's and Len's testimony of December 12
and 13, 2018, were filed in Len's bankruptcy case on February 11,
2019.  With the transcript of Len's testimony of December 13,
2018, in hand, the judgment creditors had transcript evidence (if
transcript evidence was necessary, which it was not) with which
they could have sought Rule 60(b)(2) relief in the Bankruptcy
Court.  But after the transcripts were filed in Len's bankruptcy
case, the judgment creditors delayed for more than a year (until
March 6, 2020) to seek Rule 60(b) relief based on the
transcripts.

The judgment creditors' attorney represents that he thought
that Len's testimony on December 13, 2018, had included more
extensive testimony about the issue of consideration received by
Len, and that, to his surprise, the transcript did not include

10

any such more extensive testimony.  The judgment creditors'
attorney knew that he would have a further opportunity to examine
Len at the meeting of creditors to be held in Len's bankruptcy
case under 11 U.S.C. § 341 as a result of the conversion of the
case to Chapter 7.  The judgment creditors' attorney examined Len
again at the meeting of creditors on April 1, 2019.  The six
pages of Len's testimony contained in the transcript reveal that
Len testified that he did not receive $100 or anything else from
Max at the time he executed the *Quitclaim Deed*, essentially
repeating his testimony of December 13, 2018, on that score,[7] and
not garnering any meaningful additional new evidence.
Accordingly, the long inaction after December 13, 2018, in
seeking any Rule 60(b)(2) relief based on alleged "new evidence"
that $100 had not been paid for the transfer under the *Quitclaim*

---

[7]  On April 1, 2019, Len testified:

   Q. All right. Skipping forward to the date of the
trust and quit claim deed, which was in July of 2010,
did your father make any payments to you at that time?

   A. No.

   Q. Did he give you any property at that time?

   A. No.

   Q. Did he give you anything of value in or about
july of 2010, at the time of the irrevocable trust?

   A. No.

Tr. (Dkt. No. 370-3) at 6-7.

*Deed* was not reasonable: a transcript of Len's testimony of December 13, 2018 (if required, which it was not) could have been ordered promptly (which it was not); a Rule 60(b)(2) motion could have been filed within a few short weeks after December 13, 2018; it was not necessary to examine Len anew on April 1, 2018; and, in any event, many more months of unreasonable delay ensued after April 1, 2018.   In short, Rule 60(b) relief was not sought in the Bankruptcy Court within a reasonable time.

The judgment creditors' attorney received a transcript of Len's testimony of April 1, 2019, in the later half of April 2019.[8]  On May 13, 2019, a full five months after Len testified on December 13, 2018, the judgment creditors filed in their District Court appeal a motion ("*Motion to Supplement or Remand*")[9] (D. Ct. Dkt. No. 17), that included reliance on Len's testimony of December 13, 2018.  The *Motion to Supplement or Remand* sought to supplement the record on appeal with the three transcripts of testimony (the transcript of the testimony of Max

---

[8]  The transcript is not signed by the court reporter and does not bear a date of its preparation.  However, Max has not challenged the accuracy of the transcript.

[9]  The District Court Motion was titled:

Motion of the Appellants to Supplement the Record on Appeal, or Alternatively, to Remand this Case to the Bankruptcy Court for Further Findings of Fact Concerning the Alleged Transfer of 1610 Riggs Place, NW from Len Salas To Max Salas Through a Quitclaim Deed Dated on or about July 6, 2010.

on December 12, 2018, and the transcripts of Len on December 13, 2018, and April 1, 2019) and sought, in the alternative, a remand to the Bankruptcy Court.

In seeking to supplement the record on appeal by adding the three transcripts, the judgment creditors stated:

> 9.   When discovering new information or evidence after trial, an Appellant may request the trial Court for a new trial or to reconsider its decision pursuant to Fed R. Civ. P. 59 or 60 (Fed. R. Bankr. Proc. 9023 and 9024, respectively).   However, the Bankruptcy Court does not have jurisdiction because of the Appellants' timely appeal.  Further, the new information from the Debtor and his son, was not available to the Appellants until mid-December, 2018, well after the deadline for filing an appeal.

The judgment creditors failed to inform the District Court that the concluding sentence of Fed. R. Bankr. P. 9024 states: "In some circumstances, Rule 8008 governs post-judgment motion practice after an appeal has been docketed and is pending."  And they failed to inform the District Court that, in turn, Rule 8008 recognizes that an appellant may file a **timely** motion in the bankruptcy court under Fed. R. Bankr. P. 9023 or 9024 for the bankruptcy court to grant relief from an order that is the subject of a pending appeal.  The judgment creditors failed to file a timely motion under Rule 9023 or 9024 in the Bankruptcy Court.

The *Motion to Supplement or Remand*, at 7-8, suggested that as an alternative to supplementing the record on appeal with the after-acquired transcripts, "remand would be appropriate."

13

On May 29, 2019, Max filed his opposition to the *Motion to Supplement or Remand*.  (Appeal Dkt. No. 21).  The judgment creditors did not file a reply.  During the pendency of the *Motion to Supplement or Remand*, the judgment creditors failed to file any motion in the Bankruptcy Court under Fed. R. Civ. P. 60(b) to assure that Rule 60(b) relief was pursued within the deadline set by Rule 60(c)(1) (which requires filing of a Rule 60(b) motion within a reasonable time and, for a motion under Rule 60(b)(1), (2), or (3), within no later than one year after entry of the judgment at issue).  The one-year anniversary of the *Homestead Decision* fell on September 25, 2019.  Any later-filed motion under Rule 60(b)(1), (2), or (3) was untimely.[10]

On January 2, 2020, the District Court entered its *Order* (Appeal Dkt. No. 29) and a *Memorandum Opinion* (Appeal Dkt. No. 30) disposing of the *Motion to Supplement or Remand*.  The *Memorandum Opinion* explained at length why supplementation of the record on appeal would not be proper under Fed. R. Bankr. P. 8009(e) (dealing with correcting or modifying the record of what transpired in the bankruptcy court) and why the judgment

---

[10]  It has long been recognized that Rule 60(b) relief is barred if not sought in a timely fashion during a pending appeal. *See Silberline Mfg. Co. v. Int'l Nickel Co.*, 569 F.2d 1217, 1218 n.1 (3d Cir. 1977), noting its prior suggestion to an appellant, who had moved for a remand to the district court to consider new evidence, that it "file a motion in the district court pursuant to F.R.Civ.P. 60(b) to avoid any problems of laches and the statute of limitations in seeking such relief."

creditors' *Motion to Supplement or Remand* did not represent an extraordinary circumstance warranting invocation of the Court's equitable powers to supplement the record on appeal. *Mem. Op.* at 3-7.

The *Memorandum Opinion* (at 7) noted:

> [T]he information that Appellants seek to introduce for the first time on appeal in this case is entirely new and actually contradicts other evidence in the record. Thus, in effect, an additional factual dispute among the parties would be created by the introduction of this new evidence. And, under 28 U.S.C. § 158(a), this Court is merely called to exercise appellate jurisdiction over Judge Teel's ruling, not to adjudicate any new factual disputes between the parties. That is precisely why, in lieu of an appellate court's supplementing a case with new evidence, "[n]ormally, supplementation of the record is effected by remanding the case to the [court below] to allow that court to order the introduction of new evidence," **where appropriate.** [Citing *Colbert v. Potter*, 471 F.3d 158, 166 (D.C. Cir. 2006).]

[Emphasis added.] The District Court did not address under what standards it would be appropriate for the Bankruptcy Court to

order the introduction of new evidence.[11]  As will be seen, in

the absence of fraud on the court,[12] the vehicle for determining

whether it is appropriate to order the introduction of new

evidence is a motion under Fed. R. Civ. P. 60(b) or an

independent action in some circumstances under Fed. R. Civ. P.

60(d)(1).

    The District Court then stated:

> Appellants have requested such a remand as an alternative
> to allowing the new evidence to be submitted on appeal
> (see Appellants' Mem. at 10 (asserting that "remand would
> be appropriate"), and they have also made clear that they
> wish to have the matter sent back to the bankruptcy court
> so that the underlying issues pertaining to the new
> evidence can be litigated in the first instance before
> the bankruptcy court (*id.* at 7 (**suggesting that, if this
> appeal was not pending, Appellants would be able to file**

---

[11]  The *Colbert* decision, 471 F.3d at 166, cited
*Trans-Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d
1022, 1028 (D.C. Cir. 1999), as an appropriate instance of
remanding for the district court to consider new evidence, but
the remand in *Trans-Pacific* was because the district court had
failed to make a finding of segregability required under the
Freedom of Information Act, thus requiring that the grant of
summary judgment in favor of the Government be reversed.  *Trans-
Pacific*, 177 F.3d at 1029 (reversing and remanding, and citing
other examples, such as *National Parks & Conservation Ass'n v.
Morton*, 498 F.2d 765, 770-71 (D.C. Cir. 1974), of remands
required because the district court had failed to address a
critical issue).

    Here, the Bankruptcy Court did not fail to make any required
finding.  Accordingly, the *Homestead Decision* could not have been
reversed and remanded on that basis, and the District Court had
no basis for requiring the Bankruptcy Court to treat receipt of
the "new evidence" as appropriate.

[12]  The judgment creditors have not invoked Fed. R. Civ. P.
60(d)(3) (acknowledging a court's power to "set aside a judgment
for fraud on the court").

> **a motion for reconsideration or for a new trial in the bankruptcy court**)). Thus, **this Court will liberally construe Appellants' motion to remand as a motion for voluntary dismissal of this appeal** pursuant to Federal Rule of Bankruptcy Procedure 8023 **to enable the unencumbered additional litigation that Appellants envisions**. *See In re Pawlak*, No. 15-cv-2665, ECF No. 11-1 (D. Md. Apr. 22, 2016) (construing an unopposed motion to remand to supplement the record with additional evidence as a motion for voluntary dismissal); *see also In re Earth Structures, Inc.*, No. 7:12-cv-1958, 2013 WL 145033, at *2 (D.S.C. Jan. 14, 2013) (granting opposed motion to remand in light of "new evidence").

[Emphasis added.]  In short, the District Court's *Memorandum Opinion* decided to dismiss the appeal so that the judgment creditors could file a motion to reconsider in the Bankruptcy Court **unencumbered by any effect of the pending appeal barring such a motion**.  That is precisely what the District Court's *Order* did, stating:

> For the reasons stated in the accompanying Memorandum Opinion, it is hereby
>
> ORDERED that Appellants' motion to supplement the record on appeal is DENIED, and Appellants' alternative motion to remand (properly construed as a motion to voluntarily dismiss this appeal) is GRANTED.  It is
>
> FURTHER ORDERED that Appellants' appeal is DISMISSED.

There was no remand: the District Court construed the  motion to remand as a motion for voluntary dismissal of the appeal, and its *Order* did just that: it dismissed the appeal, nothing more, leaving the judgment creditors to proceed as they saw fit in the Bankruptcy Court as if the appeal had not been filed.

17

Even if the *Order* could be treated as remanding the matter to the Bankruptcy Court, it was a remand "to enable the unencumbered additional litigation" envisioned by the judgment creditors (*i.e.*, leaving the judgment creditors "able to file a motion for reconsideration or for a new trial in the bankruptcy court" without being barred by the pending appeal from pursuing such a motion).

Neither the *Memorandum Opinion* nor the *Order* provided any mandate directing the Bankruptcy Court as to what it was to do if the judgment creditors pursued relief in the Bankruptcy Court. The District Court left it to the judgment creditors to pursue relief in the Bankruptcy Court independently after dismissal of the appeal.

After entry of the District Court's *Memorandum Opinion* and the *Order* dismissing the appeal on January 2, 2020, the judgment creditors did not seek reconsideration in the District Court despite the District Court's *Order* having dismissed the appeal in its entirety.  That appears to have eliminated any appellate rights the judgment creditors had regarding the *Homestead Decision*, and to have left them with only appellate rights regarding any adverse ruling by the Bankruptcy court on any Rule 60(b) motion or Rule 60(d)(1) independent action that the judgment creditors might pursue.  However, as will be seen, any loss of appellate rights regarding the *Homestead Decision* does

18

not enhance their rights under Rule 60(b) or Rule 60(d)(1).

Upon the dismissal of the appeal, the appellants already had in hand the three transcripts they relied upon, and they had already addressed in the *Motion to Supplement or Remand* why those transcripts warranted setting aside the *Homestead Decision*.  Yet, they waited until March 6, 2020, sixty-four days later, to file in the Bankruptcy Court their *Motion for Reconsideration*.  That *Motion for Reconsideration* was filed over seventeen months after entry of the *Homestead Decision* on September 25, 2018, and for reasons discussed below must be denied as untimely under Fed. R. Civ. P. 60(c)(1).

## II

### RELIEF FROM THE HOMESTEAD DECISION CAN ONLY BE PURSUED VIA FED. R. CIV. P. 60(b) OR VIA AN INDEPENDENT ACTION UNDER FED. R. CIV. P. 60(d)(1), AND FED. R. CIV. P. 60(a) IS NOT A BASIS FOR THE RELIEF THE JUDGMENT CREDITORS SEEK

Fed. R. Bankr. P. 9023 makes Fed. R. Civ. P. 59 applicable, except it changes the deadline for filing a Rule 59 motion to 14 days after entry of the judgment.  The judgment creditors did not file a timely motion under Rule 59 to alter or amend the *Homestead Decision*.

The only avenue left was to file a motion under Fed. R. Civ. P. 60(b) (made applicable in relevant part by Fed. R. Bankr. P. 9024) or an independent action under Fed. R Civ. P. 60(d)(1).  As held in *Mahone v. Ray*, 326 F.3d 1176, 1181 (11th Cir. 2003), once

the time for filing a Rule 59 motion had expired, a final

judgment (like the *Homestead Decision*):

> could properly have been attacked in the [trial court]
> only by a motion pursuant to Rule 60(b) or an independent
> action. *See Hendrick v. Avent*, 891 F.2d 583, 588 (5th
> Cir. 1990) ("The law and policy surrounding a Rule 60(b)
> motion is clear that this motion was intended to be the
> only method of attacking a final judgment and not to be
> used in abundance."); *Landau & Cleary, Ltd. v. Hribar
> Trucking, Inc.*, 867 F.2d 996, 1002 (7th Cir.1989) (noting
> that Rule 60 "forbids motions to obtain relief from a
> judgment other than those made under the Federal Rules"
> and that aside from Rule 59(e), which is not presently
> applicable, the only Rule providing for relief from a
> final judgment is Rule 60(b)).

Accordingly, the judgment creditors can obtain relief from the

*Homestead Decision* only via a motion under Rule 60(b) or via an

independent action.[13]

The judgment creditors invoke Rule 60(a) as an alternative

basis for relief from the *Homestead Decision*. However, the

*Motion for Reconsideration* attacks the substance of the *Homestead*

---

[13]   When *Mahone* and the decisions it cites were decided, the
final sentence of Rule 60(b) specifically provided that "the
procedure for obtaining any relief from a judgment shall be by
motion as prescribed in these rules or by an independent action."
That language was eliminated in 2007, but the Advisory Committee
Notes indicated that the changes to Rule 60 "are intended to be
stylistic only" and then clarified that:

> The final sentence of former Rule 60(b) said that the
> procedure for obtaining any relief from a judgment was by
> motion as prescribed in the Civil Rules or by an
> independent action.   That provision is deleted as
> unnecessary.   **Relief continues to be available only as
> provided in the Civil Rules or by independent action.**

[Emphasis added.]

*Decision*, and Rule 60(a) is not an avenue for the seeking relief from a judgment based on substantive errors.  As noted in *Fanning v. George Jones Excavating, L.L.C.*, 312 F.R.D. 238, 239 (D.D.C. 2015):

> Rule 60(a) permits a court to "correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." Fed. R. Civ. P. 60(a).  The rule's limitation to "clerical" mistakes and those arising from "oversight and omission" means that it cannot be used to change the substance of an order or judgment. As one leading treatise puts it, "a motion under Rule 60(a) only can be used to make the judgment or record speak the truth and cannot be used to make it say something other than what originally was pronounced." 11 Charles Alan Wright et al., Federal Practice and Procedure § 2854 (3d ed. 2012). Or in the words of another, "Rule 60(a) applies when the record indicates that the court intended to do one thing but, by virtue of a clerical mistake or oversight, did another." 12 Moore's Federal Practice § 60.11[1][a] (3d ed. 2015).

The judgment creditors' contention that the *Homestead Decision* was in error asserts errors of "substance, not expression," putting it outside the scope of Rule 60(a).  *Fanning*, 312 F.R.D. at 239.  *See also Jordan v. U.S. Dep't of Labor*, 331 F.R.D. 444, 449 (D.D.C. 2019), *aff'd sub nom. Jordan v. United States Dep't of Labor*, No. 19-5201, 2020 WL 283003 (D.C. Cir. Jan. 16, 2020).

III

ANY MOTION FOR RELIEF FROM THE HOMESTEAD
DECISION PURSUED BY THE JUDGMENT CREDITORS UNDER
FED. R. BANKR. P. 9024 AND FED. R. CIV. P. 60(b) MUST BE TIMELY

The concluding sentence of Fed. R. Bankr. P. 9024 notes: "In some circumstances, Rule 8008 governs post-judgment motion

21

practice after an appeal has been docketed and is pending." Rule 8008 conforms bankruptcy practice to that of Fed. R. Civ. P. 62.1 and Fed. R. App. P. 12.1. Rule 8008 makes clear that after an appeal has been filed, any Rule 60(b) motion must be **timely** filed in the bankruptcy court. Rule 8008 ("**Indicative Rulings**") provides:

> (a) RELIEF PENDING APPEAL. If a party **files a timely motion in the bankruptcy court** for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the bankruptcy court may:
>
> > (1) defer considering the motion;
> >
> > (2) deny the motion; or
> >
> > (3) state that the court would grant the motion if the court where the appeal is pending remands for that purpose, or state that the motion raises a substantial issue.
>
> . . .
>
> (c) REMAND AFTER AN  INDICATIVE RULING. If the bankruptcy court states that it would grant the motion or that the motion raises a substantial issue, the district court or BAP may remand for further proceedings, but it retains jurisdiction unless it expressly dismisses the appeal. If the district court or BAP remands but retains jurisdiction, the parties must promptly notify the clerk of that court when the bankruptcy court has decided the motion on remand.

[Emphasis added.] Accordingly, Rule 8008(a) makes clear that after an appeal has been pursued, a party seeking under Fed. R. 60(b) to pursue relief from a final order of a bankruptcy court must timely file that motion in the bankruptcy court.

There are sound reasons for requiring timely filing of the

Rule 60(b) motion during the pendency of the appeal.  A trial court and the parties who obtained the ruling being attacked, and had taken steps based on that ruling, ought not be required to turn their attention under Rule 60(b) to revisiting a final order long after the final order was entered.  Here, the *Motion for Reconsideration* was filed over seventeen months after entry of the *Homestead Decision* and in the interim Max had taken many steps based upon the *Homestead Decision*.

IV

THE MOTION FOR RECONSIDERATION, AS A RULE 60(b)
MOTION, WAS NOT TIMELY FILED IN THE BANKRUPTCY COURT

With exceptions of no relevance, Fed. R. Bankr. P. 9024 makes Fed. R. Civ. P. 60 applicable to this court's final orders. The *Motion for Reconsideration* seeks relief from the *Homestead Decision* based on asserted mistakes in the *Homestead Decision* and allegedly newly discovered evidence.  The *Motion for Reconsideration* can thus be viewed as seeking relief under Rule

60(b)(1)[14] and Rule 60(b)(2).[15]  The judgment creditors also rely on Rule 60(b)(6) (permitting the court to grant relief from a final judgment based on "any other reason that justifies relief").

Under Fed. R. Bankr. P. 60(c)(1), a motion under Rule 60(b) "must be made within a reasonable time – and for reasons (1), (2), and (3) no more than one year after the entry of the judgment or order or the date of the proceeding."  The *Motion for Reconsideration* was filed in this court on March 6, 2020, seventeen months and eleven days after the entry of the *Homestead Decision* on September 25, 2018, with the result that Rule 60(b)(1) and Rule 60(b)(2) relief was not sought within one year after entry of the *Homestead Decision*.  Under Fed. R. Civ. P. 60(c)(1), the request under the *Motion for Reconsideration* for relief based on Rule 60(b)(1) or Rule 60(b)(2) must be denied as untimely.

Rule 60(b)(6) is not subject to the one-year limitation

---

[14]  Rule 60(b)(1) permits a court to relieve a party from a judgment based on "mistake, inadvertence, surprise, or excusable neglect," and under that rule, a mistake can be on the part of the court as well as a party.  *See United States v. Fernandez*, 797 F.3d 315, 319 (5th Cir. 2015)*; In re 310 Assocs.*, 346 F.3d 31, 34-35 (2d Cir. 2003); *Buggs v. Elgin, Joliet & Eastern Ry. Co.*, 852 F.2d 318, 322 (7th Cir. 1988); *Barrier v. Beaver*, 712 F.2d 231, 234-35 (6th Cir. 1983).

[15]  Rule 60(b)(2) permits a court to relieve a party from a final order for "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)."

24

applicable to a Rule 60(b)(1), (2), or (3) motion.  Rule 60(b)(6)
relief was not sought within a reasonable time as required by
Rule 60(c)(1).[16]  On the one hand, the delay in seeking Rule
60(b)(6) relief would be prejudicial to Max.  After the *Homestead
Decision* was entered, Max pursued rights based on the
determination in the *Homestead Decision* that he owned the
Property, with Max fully recognizing the risk that the *Homestead
Decision* might be reversed on appeal and the risk that the
transfer of the Property to him might be set aside by way of the
avoidance powers of the trustee in Len's bankruptcy case (for
example, under 11 U.S.C. § 544(a)(3)).  Max has, at substantial
expense, spent considerable efforts prior to the filing of the
*Motion for Reconsideration* in pursuing his rights as owner of the
Property, and obtaining confirmation of his Chapter 11 plan
dealing with the Property, including:

- appearing at hearings on July 2, 2019; September 18, 2019; October 2, 2019; and November 21, 2019, on the judgment creditors' motion to convert the case to Chapter 7;

- filing on August 1, 2019, a plan and disclosure statement and then, later, filing on October 23, 2019; December 5, 2019; and January 22, 2020, amended

---

[16]  And, for reasons discussed later, Rule 60(b)(6) was not
available even if it had been sought in a timely fashion.

versions of the same;

- applying on August 15, 2019, to hire an appraiser "in order to assist the debtor in seeking refinancing for the Property as part of his Chapter 11 Plan;"

- applying on October 4, 2019, to employ conflicts counsel to deal with resolving the bank holding the mortgage on the Property;

- filing on November 20, 2019, a motion to approve a compromise with the bank holding the mortgage on the Property;

- filing on January 6, 2020, an objection to the District of Columbia's secured claim against the Property; and

- appearing at a confirmation hearing on January 22, 2020, on the third amended Chapter 11 plan, and obtaining entry of an order on January 28, 2020, confirming that plan.

If the judgment creditors' *Motion for Reconsideration* were treated as a timely Rule 60(b)(6) motion, and it were granted, the debtor would have been severely prejudiced in having pursued rights in reliance upon the *Homestead Decision*.  On the other hand, the judgment creditors point to no valid basis for treating their delay in filing the *Motion for Reconsideration* for seventeen months as pursuing Rule 60(b)(6) relief within a reasonable time.

In short, the delay of seventeen months after entry of the *Homestead Decision* to seek Rule 60(b) relief was not the pursuit of Rule 60(b) relief within a reasonable time, whether such relief is sought under Rule 60(b)(1), 60(b)(2), or 60(b)(6).  The *Motion for Reconsideration* for relief under Rule 60(b) from the *Homestead Decision* must be denied as untimely.  As explained below, the judgment creditors have no way to avoid this result.

V

THE MOTION TO SUPPLEMENT OR REMAND DID NOT SUSPEND
THE TIME FOR FILING A RULE 60(b) MOTION IN THE BANKRUPTCY
COURT AND THE DISTRICT COURT LACKED AUTHORITY TO EXTEND THE TIME

Paragraph 4 of the *Motion to Supplement or Remand* stated: "Authority for the relief requested is set forth in Fed. R. Civ. Proc. [sic: meant Fed. R. Bankr. P.] 8009(e)(3) which provides that questions regarding the record on appeal must be presented to the District Court."  Remarkably, the *Motion* and the accompanying *Memorandum* failed to note the neighboring rule, Fed. R. Bankr. P. 8008, which permits timely filing of a Rule 60(b) motion in the bankruptcy court despite the pendency of an appeal.

In their *Memorandum* in support of the *Motion to Supplement Record or to Remand*, the judgment creditors alleged:

> 9. When discovering new information or evidence after trial, an Appellant may request the trial Court for a new trial or to reconsider its decision pursuant to Fed R. Civ. P. 59 or 60 (Fed. R. Bankr. Proc. 9023 and 9024, respectively).  However, the Bankruptcy Court does not have jurisdiction because of the Appellants' timely appeal. Further, the new information from the Debtor and his son, was not available to the Appellants until

27

mid-December, 2018, well after the deadline for filing an appeal.

*Mem.* at 4.  Although the Bankruptcy Court lacked authority during the pendency of the appeal to *grant* Rule 60(b) relief under Fed. R. Bankr. P. 9024, Fed. R. Bankr. P. 8008 clearly permitted the judgment creditors to timely file a Rule 60(b) motion in the Bankruptcy Court despite the pendency of the appeal.  This was true even before the adoption of Fed. R. Bankr. P. 8008 and its analog, Fed. R. Civ. P. 62.1.[17]

A consequence of an appellant's right to file a timely Rule 60(b) motion in the trial court during an appeal is that an appeal from a judgment does not have the effect of tolling or enlarging the one-year deadline of Rule 60(c)(1).  As the Court of Appeals explained in *Carr v. D.C.*, 543 F.2d 917, 926 n.70

---

[17] As stated in *Smith v. Pollin*, 194 F.2d 349, 350 (D.C. Cir. 1952):

> When an appellant in a civil case wishes to make a [Rule 60(b)] motion . . . while his appeal is still pending, the proper procedure is for him to file his motion in the District Court. If that court indicates that it will grant the motion, the appellant should then make a motion in this court for a remand of the case in order that the District Court may grant the motion . . . .

*See also Doctors Nursing & Rehab. Ctr. v. Sebelius*, 613 F.3d 672, 677 (7th Cir. 2010) (noting that "the majority rule (accepted by this circuit) is that while a district court may consider a motion for relief from a judgment under Federal Rule of Civil Procedure 60, and even deny the motion, while an appeal is pending, it must request permission from the appellate court to grant the motion." (Citations omitted); *Toliver v. County of Sullivan*, 957 F.2d 47, 49 (2d Cir. 1992).

28

(D.C. Cir. 1976):

> That is because a timely Rule 60(b) motion predicated on
> newly-discovered evidence can be made notwithstanding
> pendency of the appeal.  The procedure acceptable in this
> circuit is set forth in *Smith v. Pollin*, 90 U.S.App.D.C.
> 178, 179, 194 F.2d 349, 350 (1952).  See generally 7 J.
> Moore, Federal Practice ¶ 60.30(2) (2d ed. 1948); 11 C.
> Wright and A. Miller, Federal Practice § 2873 (1973).

Indeed, in *Goland v. CIA*, 607 F.2d 339, 372 (D.C. Cir. 1978), the

Court of Appeals stated: "The one-year period [for filing a Rule

60(b)(2) motion] is not tolled by a pending appeal, and **under the**

**federal rules no court has power to extend the deadline.**"

(Emphasis added.)

The judgment creditors ought to have timely filed any Rule

60(b) motion in this court despite the pendency of the appeal.

They did not, and the District Court lacked the power to alter

the requirement under Rule 60(c)(1) that any motion under Rule

60(b) be filed "within a reasonable time" and in the case of a

motion under Rule 60(b)(1), (2), or (3), no more than a year

after entry of the judgment . . . ."

Even if the *Motion to Supplement or Remand* could be treated

as suspending the time for seeking Rule 60(b) relief, the

judgment creditors engaged in unreasonable delay both before

filing and after disposition of the *Motion to Supplement or*

*Remand.*[18]

VI

THE MOTION TO SUPPLEMENT OR REMAND FILED IN THE DISTRICT
COURT CANNOT BE TREATED AS A TIMELY FILED RULE 60(b) MOTION

The *Motion to Supplement Record or to Remand* was filed in

the District Court on May 13, 2019, within one year after the

entry of the *Homestead Decision* on September 25, 2018.  However,

the *Motion to Supplement Record or to Remand* cannot be treated as

a timely Rule 60(b) motion mis-filed in the District Court that

ought to be treated as filed in the correct court, the Bankruptcy

Court, when the motion was filed in the District Court.

_____

[18]  The *Motion to Supplement or Remand* was filed in the
District Court on May 13, 2019, seven months and eighteen days
after entry of the *Homestead Decision*, and along the way the
judgment creditors did not proceed with expedition.  They could
have promptly brought to the District Court's attention without a
transcript that Len testified on December 13, 2018, that Max had
not paid Len $100: Max could not dispute the incontestable fact
that Len had so testified.  If they needed to have a transcript,
the judgment creditors dragged their feet and took 50 days to
order a transcript of Len's testimony of December 13, 2018.  Had
a transcript been ordered in December 2018, Len's testimony of
December 13, 2018, could have been brought to the District
Court's attention by early January 2019 instead of mid-May 2019.
    The District Court's *Order* dismissing the appeal was entered
on January 2, 2020.  By then, the judgment creditors had long ago
already briefed in the District Court why reconsideration by the
Bankruptcy Court was warranted based on the three transcripts.
Yet, the judgment creditors inexplicably failed to file their
*Motion for Reconsideration* in the Bankruptcy Court until March 6,
2020, sixty-four days later.  That 64-day delay in filing the
*Motion for Reconsideration* was a failure to seek Rule 60(b)
relief within a reasonable period of time as required by Rule
60(c)(1) even if the appeal had suspended the Rule 60(c)(1)
deadline, which it had not.

A.

THE DISTRICT COURT DID NOT TREAT THE MOTION TO
SUPPLEMENT OR REMAND AS A TIMELY RULE 60(b) MOTION FILED IN
THE BANKRUPTCY COURT, AND WOULD HAVE LACKED AUTHORITY TO DO SO

The District Court's *Memorandum Opinion* and its *Order* did
not treat the *Motion to Supplement or Remand* filed in the
District Court as a Rule 60(b) motion filed in the Bankruptcy
Court.  Moreover, there was no inherent authority in the District
Court to treat the *Motion to Supplement or Remand* as a timely
Rule 60(b) motion.  As is made clear by Fed. R. Civ. P. 60(b)
itself and Fed. R. Bankr. P. 8008 (and its analog, Fed. R. Civ.
P. 62.1), a Rule 60(b) motion for relief from a final judgment
must be filed in the trial court, and the motion must be timely
filed in the trial court.  This was true even before the adoption
of Fed. R. Bankr. P. 8008 and its analog, Fed. R. Civ.P. 62.1.
*See Bankers Mortg. Co. v. United States*, 423 F.2d 73, 78 (5th
Cir. 1970) ("The motion for relief from final judgment must be
filed in the [trial] court and in the action in which the
original judgment was entered.").  To treat the *Motion to
Supplement Record or to Remand* as having been a timely Rule 60(b)
motion would contravene the controlling precedent under *Carr v.
D.C.*, 543 F.2d at 926, that a timely Rule 60(b) motion can be
made in the trial court notwithstanding the pendency of the
appeal, and of *Goland v. CIA*, 607 F.2d at 372, that the one-year
period for filing a Rule 60(b)(2) motion "is not tolled by a

31

pending appeal, and under the federal rules no court has power to extend the deadline."

B.

THE DISTRICT COURT DID NOT TRANSFER THE MOTION TO
SUPPLEMENT OR REMAND TO THE BANKRUPTCY COURT,
AND 28 U.S.C. § 1631 WOULD NOT HAVE AUTHORIZED IT
TO TRANSFER THE MOTION TO THE BANKRUPTCY COURT AS THOUGH
IT WERE A RULE 60(b) MOTION MISFILED IN THE DISTRICT COURT

The court cannot treat the *Motion for Reconsideration* as relating back to the date of the filing of the *Motion to Supplement or Remand* in the District Court such as to obviate the bar of Rule 60(c)(1) to granting the judgment creditors Rule 60(b) relief. The judgment creditors concede that they have been unable to find a case directly on point concerning whether the *Motion to Supplement or Remand* filed in the District Court filed within one year of entry of the *Homestead Decision*, permits the Bankruptcy Court to treat the *Motion for Reconsideration* as filed within one year of entry of the *Homestead Decision* for purposes of Rule 60(c)(1). No such authority exists.

1. *Inapplicability of 28 U.S.C. § 1631.* Authority permitting the transfer of a matter misfiled in one court to the proper court, and allowing the matter to be treated as filed when it was filed in the transferor court, is found in 28 U.S.C. § 1631, which provides:

> Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that

32

there is a want of jurisdiction, the court shall, if it
is in the interest of justice, transfer such action or
appeal to any other such court (or, for cases within the
jurisdiction of the United States Tax Court, to that
court) in which the action or appeal could have been
brought at the time it was filed or noticed, and the
action or appeal shall proceed as if it had been filed in
or noticed for the court to which it is transferred on
the date upon which it was actually filed in or noticed
for the court from which it is transferred.

The statute does not apply here.

First, the District Court did not transfer the *Motion to Supplement or Remand* to this court. *See Howitt v. U.S. Dep't of Commerce*, 897 F.2d 583, 584 (1st Cir. 1990) (``The simple fact, however, is that the Federal Circuit did not transfer [the] case. Thus, this statute does not cure the jurisdictional defect.''); *Jovanovic v. US-Algeria Bus. Council*, 561 F. Supp. 2d 103, 113 (D.D.C. 2008) (declining to treat plaintiff's claims as if the District of New Jersey had transferred them). Instead, the District Court dismissed the appeal so that the judgment creditors could attempt to have the Bankruptcy Court consider the new evidence. The judgment creditors then made that attempt by filing in this adversary proceeding their *Motion for Reconsideration*.

Second, the *Motion to Supplement or Remand* was not cast as a Rule 60(b) motion, but instead sought relief that the District Court clearly had jurisdiction to consider. Section 1631 does not apply when a proceeding is filed in a court that has jurisdiction over the proceeding. *See Hoffmann v. United States*,

33

266 F. Supp. 2d 27, 36 (D.D.C. 2003) ("As jurisdiction is proper
in this court, this court is without power to transfer this
action . . ." (citations omitted)), *aff'd*, 96 F. App'x 717 (Fed.
Cir. 2004).

Finally, treating the *Motion to Supplement or Remand* as a
timely Rule 60(b) motion would contravene Fed. R. Bankr. P. 8008,
which contemplates that if an appellant wishes to pursue Rule
60(b) relief in the bankruptcy court, it must timely file the
Rule 60(b) motion in the bankruptcy court, not in the pending
appeal.

2.  *The Bankruptcy Court's Lack of Discretion to Deem the
Motion for Reconsideration as Filed When the Motion to Supplement
or Remand Was Filed in the Appeal in the District Court.*  The law
and policy surrounding Rule 60(b) are clear that after the time
for filing a Rule 59 motion has expired, a Rule 60(b) motion,
timely filed in the trial court, is "intended to be the only
method of attacking a final judgment" in the trial court.
*Hendrick v. Avent*, 891 F.2d 583, 588 (5th Cir. 1990).
Recharacterizing the *Motion to Supplement or Remand* filed in the
District Court as a Rule 60(b) motion and then treating the
pending *Motion for Reconsideration* filed in this bankruptcy case
as relating back to the date of the filing of the *Motion to
Supplement or Remand* in the District Court (so that Rule 60(b)
relief could be viewed as sought within one year after entry of

34

the *Homestead Decision*) would be a case of engaging in contortions not permitted by the Federal Rules of Civil Procedure.

As in *Hendrick*, 891 F.2d at 589, any such contortions would be to engage in "extensive legal gymnastics" unwarranted under Rule 60(b).  In *Hendrick*, the bankruptcy court entered an order approving a sale of stock.  Within a year, the trustee and Hendrick filed a complaint in the district court against the purchaser and others based on misrepresentations made incident to the sale, and then, after the passage of one year after entry of the sale order, filed a second amended complaint asserting new claims based on that misconduct.  The district court dismissed those claims as barred by the res judicata effect of the sale order, but Hendrick urged that the second amended complaint ought to be treated as a Rule 60(b) motion regarding the sale order.  The second amended complaint was filed more than one year after the entry of the sale order, thus making the filing untimely under Rule 60(c)(1) even if it were treated as a Rule 60(b) motion.  The court of appeals upheld the district court's refusal to treat the second amended complaint as a Rule 60(b) motion relating back to the filing of the original complaint, stating:

> Clearly, making appellant's claim fit under the label of
> a Rule 60(b) motion would take a recharacterization of
> the pleadings plus a relation back in time to the
> original complaint to fit within the time restraints [of

35

Rule 60(c)(1)].  The district court properly refused to perform such feats.

The court of appeals further held that any Rule 60(b) motion ought to have been filed in the bankruptcy court case in which the sale order was entered.  891 F.2d at 588 n.11.  The point of *Hendrick* is that filing the correct type of motion and timely filing it in the trial court matters when it comes to seeking Rule 60(b) relief from a judgment.[19]

Here, too, the *Motion to Supplement or Remand* filed in the District Court was not a Rule 60(b) motion and ought not be recharacterized as such.  Even if it were treated as a Rule 60(b) motion, it was not filed in the Bankruptcy Court, and the grounds it asserted were not pursued in the Bankruptcy Court under Rule 60(b) until the judgment creditors filed their *Motion for Reconsideration* more than seventeen months after entry of the *Homestead Decision*.  Moreover, the judgment creditors waited until sixty-four days after the District Court entered its *Order* dismissing the appeal to file their *Motion for Reconsideration*.

---

[19]  A decision similar to *Hendrick* is *Engleson v. Burlington N. R. Co.*, 972 F.2d 1038, 1043-1044 (9th Cir. 1992) (relying on *Hendrick*, and holding that a complaint filed in a new action after the dismissal of the plaintiffs' first action, which was timely but had failed to cite the proper statute for subject matter jurisdiction, was time-barred and reversing, as an abuse of discretion, the district court's finding that the complaint in the second action related back under Fed. R. Civ. P. 15(c) to the complaint in the first action).  Filing in the correct proceeding matters.

36

The *Motion for Reconsideration* ought not be treated as relating back in time to the date of the filing of the *Motion to Supplement or Remand* in the District Court.

In short, the judgment creditors have not offered any viable argument that would support finding that the judgment creditors made a timely Rule 60(b) motion in this court.

VII

EVEN IF THE DISTRICT COURT'S ORDER IS TREATED AS A REMAND ORDER, THAT ORDER DID NOT ALTER THE GENERAL RULE THAT THE TRIAL COURT CAN GRANT RELIEF FROM A JUDGMENT BASED ON NEW EVIDENCE ONLY IN ACCORDANCE WITH THE TIME LIMITATIONS OF FED. R. CIV. P. 60(c)(1) REGARDING GRANTING RULE 60(b) RELIEF

Despite Fed. R. Bankr. P. 8008, and the failure of the judgment creditors to have sought Rule 60(b) relief in the Bankruptcy Court, the District Court, as the appellate court, had discretion to remand to the Bankruptcy Court to consider any motion the judgment creditors might file under Rule 60(b) for relief from the judgment. *See Lopez Dominguez v. Gulf Coast Marine & Assocs., Inc.*, 607 F.3d 1066 (5th Cir. 2010) (pending Rule 60(b) motion preferred but not required before remand).

Unlike appellate decisions in which the appellate court specifies matters the trial court must address on remand, the District Court did not require the Bankruptcy Court to receive into evidence the new evidence, and, instead, merely allowed the appeal to be dismissed so that the appeal did not act as a bar (as feared by the judgment creditors) to the Bankruptcy Court's

37

considering a Rule 60(b) motion based on the allegedly newly discovered evidence.

"The proper procedure for dealing with newly discovered evidence is for the party to move for relief from the judgment in the district court under rule 60(b) of the Federal Rules of Civil Procedure." *Goland v. CIA*, 607 F.2d at 371; *Bankers Mortg. Co. v. United States*, 423 F.2d at 78.  Accordingly, if the District Court's *Order* is treated as a remand order, the *Order* can only be viewed as remanding the proceeding to permit the filing of a Rule 60(b) motion.

The District Court's *Order* specifically did not instruct the Bankruptcy Court to consider the judgment creditors' new evidence if the judgment creditors failed to demonstrate in the Bankruptcy Court that Rule 60(b) relief was being sought in a timely fashion.  As the District Court noted:

> under 28 U.S.C. § 158(a), this Court is merely called to exercise appellate jurisdiction over Judge Teel's ruling, not to adjudicate any new factual disputes between the parties.  That is precisely why, "[n]ormally, supplementation of the record is effected by remanding the case to the [court below] to allow that court to order the introduction of new evidence," **where appropriate**.  [Citing *Colbert v. Potter*, 471 F.3d 158, 166 (D.C. Cir. 2006).

[Emphasis added.]  In other words, the District Court left it to the Bankruptcy Court to decide whether it would be "appropriate" to consider new evidence.  It would be odd for the District Court, as the appellate court, to delve into issues under Rule

60(b) that are the province of the Bankruptcy Court as the trial court to decide in the first instance.[20]

VIII

NOTHING IN 28 U.S.C. § 2106
REQUIRES THIS COURT TO CONSIDER
THE NEW EVIDENCE WHEN RULE 60(b) RELIEF IS TIME-BARRED

"[Any] court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment . . . and may remand the cause . . . as may be just under the circumstances." 28 U.S.C. § 2106. However, there was no remand order here; instead, there was a dismissal to allow pursuit in the Bankruptcy Court of

---

[20] The District Court did not purport to address (and ought not have addressed):

(a) whether Rule 60(b) relief, upon being sought in the Bankruptcy Court, was sought "within a reasonable time" as required by Rule 60(c)(1) even putting aside the one-year maximum period for filing a Rule 60(b)(1) or (2) motion based on newly discovered evidence;

(b) whether the evidence was (i) "newly discovered evidence" that (ii) "could not have been discovered in time to move for a new trial under Rule 59(b);" and

(c) whether the evidence would warrant relief from the final judgment.

Those are issues reserved to the Bankruptcy Court as the trial court to address in the first instance, and they were not briefed and argued in the District Court. Indeed, the District Court made clear that any factual issues were to be determined by the Bankruptcy Court. *See Memorandum Opinion* at 7 (noting that "under 28 U.S.C. § 158(a), this Court is merely called to exercise appellate jurisdiction over Judge Teel's ruling, not to adjudicate any new factual disputes between the parties").

allegedly newly discovered evidence.[21]  Even if the District
Court had ordered a remand, it made clear it was leaving it to
the Bankruptcy Court to determine whether it would be
"appropriate" to grant relief based on the new evidence.

This is not a case of a remand to a trial court to make a
finding, not yet made, regarding an issue that was required to be
adjudicated.  *See, e.g., Trans-Pacific*, 177 F.3d at 1028
(discussed in footnote 11, *supra*, reversing and remanding to the
trial court to make a required finding).  This is not a case in
which reversal was warranted based on the Bankruptcy Court having
failed to make a finding necessary to support its judgment.

However, in one decision, the Court of Appeals remanded a
case to the District Court to consider new evidence even though
it was too late to pursue Rule 60(b)(2) relief in the District
Court.  *See Powell v. U.S. Bureau of Prisons*, 927 F.2d 1239 (D.C.

---

[21]  The approach the District Court here was consistent with
the approach the Court of Appeals took in a case in 2011.  *See
Khan v. Obama*, No. CIV. A. 08-1101 JDB, 2014 WL 4843907, at *4
(D.D.C. Sept. 2, 2014)):

> On the same day that the D.C. Circuit affirmed this
> Court's denial of Khan's habeas petition, it issued a
> separate order denying Khan's motion to supplement the
> record, reasoning that "'[a]ppellate courts do not
> ordinarily consider evidence not contained in the record
> developed at trial.'" *Khan v. Obama*, No. 10-5306 (D.C.
> Cir. Sept. 6, 2011) (quoting *Colbert v. Potter*, 417 F.3d
> 158, 165 (D.C. Cir. 2006)).  This denial, however,
> was explicitly "without prejudice to appellant's renewing the
> motion in the district court under Federal Rule of Civil
> Procedure 60(b)." *Id.*

Cir. 1991) (remanding case when disclosures by the Bureau in other litigation subsequent to the district court's decision suggested that the district court's finding concerning the "segregability" of the requested document was no longer viable, and finding that a remand under 28 U.S.C. § 2106 to consider the new evidence was warranted "given the equities involved and the extraordinary circumstances presented in this case"). *Powell* is distinguishable and the District Court's *Order* here cannot be viewed as requiring consideration of the allegedly "new evidence" without regard to the limits of Rule 60 regarding the court's considering such new evidence:

(1) Here, the District Court's *Order* dismissing the appeal did not make a remand or include any instructions in its *Order* dismissing the appeal.

(2) The Court of Appeals in *Powell* made clear that consideration of the new evidence was required, not merely (as here) that the appeal was now dismissed so that the judgment creditors could seek to have the Bankruptcy Court consider the new evidence and determine whether Rule 60(b) relief is appropriate.

(3) The Court of Appeals made clear that it was ruling that consideration of the new evidence was required even though Rule 60(b)(2) could not be invoked because of Rule 60(c)(1). Here, the District Court here did not even

address Rule 60(c)(1).

(4) The dispute was not a private dispute, as here, but instead an action under the Freedom of Information Act, in which third party interests of the public were at stake, and which involved "extraordinary circumstances" and special equities.  This case, unlike *Powell*, does not involve "extraordinary circumstances" or any special equities.

(5) The evidence in *Powell* appeared to clearly demonstrate that the facts were contrary to the facts found by the trial court.[22]  As discussed in part IX, below, the "new evidence" here does not suggest that the court's findings are clearly no longer viable.

In short, regardless of the extent of an appellate court's remand powers under 28 U.S.C. § 2106, the District Court did not make a remand here requiring the court to consider the "new evidence."

IX

RULE 60(b) RELIEF WOULD NOT BE APPROPRIATE
RELIEF EVEN IF SUCH RELIEF HAD BEEN SOUGHT TIMELY

Even if the *Motion for Reconsideration* were treated as timely seeking Rule 60(b) relief, it does not set forth grounds

---

[22] *See Powell*, 927 F.2d at 1243 n.9 (noting that "the substantive soundness of a factual determination required by statute [non-segrability to support non-disclosure under FOIA] may, in certain circumstances, be called into question by subsequent events" and that "the intervening events directly contradict the Bureau's affidavit: if the Manual is not segregable, how did the Bureau segregate it?").

warranting Rule 60(b) relief.

### A.

### RULE 60(b)(1)

Rule 60(b)(1) relief may be sought based on a mistake made by the court or excusable neglect of the movant.  The judgment creditors have not shown the Rule 60(b)(1) relief is warranted.

1.  *The Asserted Error by the Court in Not Finding Abandonment*.  The *Motion for Reconsideration* seeks to have this court determine that Max abandoned his rights under the *Quitclaim Deed*.  Rule 60(b)(1) relief based on an asserted mistake of the court is not warranted except when there is a need to correct a clear error or prevent manifest injustice.  This follows because the standards governing Rule 60(b) are even more restrictive than the standards governing a Rule 59(e) motion,[23] and "[a] Rule 59(e) motion is discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996).

Moreover, "motions for reconsideration, whatever their procedural basis, cannot be used as an opportunity to reargue facts and theories upon which a court has already ruled, nor as a

---

[23]  *See Kline v. Archuleta*, 309 F.R.D. 91, 92–93 (D.D.C. 2015), *aff'd sub nom. Kline v. Cobert*, No. 15-5248, 2016 WL 1272945 (D.C. Cir. Feb. 10, 2016).

vehicle for presenting theories or arguments that could have been advanced earlier." *Estate of Gaither ex rel. Gaither v. District of Columbia*, 771 F.Supp.2d 5, 10 (D.D.C. 2011) (internal quotation marks and citations omitted); *Greer v. Paulson*, 505 F.3d 1306, 1317 (D.C. Cir. 2007) (Rule 60(b) does not afford a party "an opportunity to retry [its] case."). A Rule 60(b) motion is "not simply an opportunity to reargue facts and theories upon which a court has already ruled." *Black v. Tomlinson*, 235 F.R.D. 532, 533 (D.D.C. 2006) (quoting *New York v. United States*, 880 F. Supp. 37, 38 (D.D.C. 1995)). In seeking to argue anew why the *Quitclaim Deed* ought to be treated as abandoned, the judgment creditors rehash the evidence and arguments at the trial, attempting to convince the court that there was an abandonment. This amounts to an impermissible attempt to reargue facts and theories upon which the court has already ruled.

Moreover, the judgment creditors have failed to show as required by *Firestone* that there is a need to correct a clear error or prevent manifest injustice. As discussed at length in the *Homestead Decision*, Len continued to treat Max as the owner of the Property, as did Max. Moreover, as noted in the *Homestead Decision* at 56-57, the failure to record a deed does not make the deed ineffective. There was no abandonment of Max's rights under the *Quitclaim Deed*.

44

2.  *Excusable Neglect*.  The judgment creditors also seek
Rule 60(b)(1) relief on the basis that their failure to present
the testimony they gathered in the three transcripts at issue was
due to excusable neglect.  They assert that the court's *Homestead
Decision* rested on a ground that Max had not advanced, namely,
the court's conclusion that consideration provided by Max to Len
caused the *Quitclaim Deed* to be effective to transfer the
Property to Max despite the failure of the trust named as the
recipient in the *Quitclaim Deed*.  However, the judgment creditors
could have sought a new trial under Fed. R. Civ. P. 59(a) on that
basis.  While their argument might have justified granting Rule
59(a) relief, their long delay in presenting their argument to
the Bankruptcy Court as a basis for Rule 60(b) relief is a case
of inexcusable neglect.  In any event, as discussed next, the
evidence they gathered via the three transcripts at issue does
not demonstrate any error in the *Homestead Decision*.

B.

RULE 60(b)(2)

Under Rule 60(b)(2), the court may grant relief from a
judgment on the basis of "newly discovered evidence" that the
party, by "due diligence," could not have discovered in time to
move for a new trial pursuant to Rule 59(b). To obtain relief
from judgment on the basis of "newly discovered evidence," a
party must show that the following requirements are met: "(1) the

evidence must have been in existence at the time of trial; (2)
the evidence must be such that it was not and could not by the
exercise of due diligence have been discovered in time to present
it in the original proceeding; (3) the evidence must not be
merely cumulative or impeaching; and (4) the evidence must be
admissible and credible, and of such a material and controlling
nature as will probably change the outcome." *Lans v. Gateway
2000, Inc.,* 110 F.Supp.2d 1, 4 (D.D.C. 2000) (quoting *In re
Korean Air Lines Disaster of September 1, 1983*, 156 F.R.D. 18, 22
(D.D.C. 1994)).

It is debatable whether the judgment creditors are
presenting "newly discovered evidence" but (for reasons discussed
later), it ultimately does not matter.  Len and Max both
testified at length in the homestead exemption trial in August
2018, and were available to be examined regarding the matters to
which they later testified in the three transcripts of testimony
in December 2018 and April 2019.  Their knowledge regarding the
consideration paid for the transfer under the *Quitclaim Deed* was
available in the trial, and for that reason is evidence available
at the trial such that the testimony arguably does not constitute
newly discovered evidence.  *See NYS-ILA Med. v. Salco Trucking
Corp.,* No. 90 CIV. 5949 (CSH), 1993 WL 546669, at *1 (S.D.N.Y.
Dec. 30, 1993) ("It is a general tenet of the law that litigants
cannot disturb adverse judgments on the ground of evidence they

46

could and should have presented at an earlier time.")  Under

*Lans*, 110 F.Supp.2d at 4, the judgment creditors were required to

show that the testimony in the three transcripts "was not and

could not by the exercise of due diligence have been discovered

in time to present it in the original proceeding." *See also Bain*

*v. MJJ Prods., Inc.*, 751 F.3d 642, 649 (D.C. Cir. 2014)

(affirming denial of motion for reconsideration where "newly

discovered" evidence was known to plaintiff prior to entry of

judgment and the plaintiff had failed to exercise reasonable

diligence in seeking the evidence in question); *Stewart v.*

*Panetta*, 826 F.Supp.2d 176, 177 (D.D.C. 2011) (explaining that

reconsideration under Rule 54 may be premised on the "discovery

of new evidence not previously available").

The judgment creditors' attorney examined Max and Len

extensively during the homestead exemption trial regarding

whether Max, not Len, was the one who had paid expenses

associated with the Property, and the *Quitclaim Deed* was listed

as an exhibit long before the trial.  The judgment creditors'

attorney could have asked at the trial the same questions

reflected by the three transcripts at issue.  For example, Len's

knowledge regarding whether $100.00 was paid at the time that he

executed the *Quitclaim Deed* was there for exploration at the

trial.  The judgment creditors simply failed to inquire of Len in

that regard at the trial.  Rule 60(b) "cannot be employed simply

47

to rescue a litigant from strategic choices that later turn out
to be improvident." *Smalls v. United States*, 471 F.3d 186, 191
(D.C. Cir. 2006) (quoting *Good Luck Nursing Home, Inc. v. Harris*,
636 F.2d 572, 577 (D.C. Cir. 1980)).

In any event, regardless of whether the three transcripts
qualify as "newly discovered evidence", the transcripts do not
justify Rule 60(b)(2) relief.  Nothing in the testimony of Max
and Len in December 2018 and April 2019 contradicts the testimony
of Max and Len in the homestead exemption trial or undercuts the
findings I made in the *Homestead Decision*.

Evidence in the three transcripts of December 2018 and April
2019 regarding payments of bills and expenses relating to the
Property is merely cumulative.  The judgment creditors assert
that the testimony of Max and Len in the three transcripts
undercuts the finding in the *Homestead Decision* regarding Max,
not Len, having made all the payments on the Property's mortgage
and other expenses of the Property.  The *Homestead Decision* did
not find, as suggested by the *Motion for Reconsideration*, that
Max made *all* tax and mortgage payments that came due.  What the
*Homestead Decision* said was that Max made all payments that were
made for such expenses, even if he failed to make some mortgage
or tax payments that came due.  The *Homestead Decision* found that
Max, not Len, made the mortgage payments that were made on the
Property, but acknowledged that some monthly payments were not

48

made, and found that Max (who rented out rooms in the Property) made the payments that were made for upkeep of the Property, and for taxes and insurance relating to the Property.[24]   The three transcripts do not undercut the findings in the *Homestead Decision* concerning payments made regarding the Property.

Len's testimony in December 2018 and April 2019 reveals that Len received no money, property, or other collateral when, almost nine years earlier, he executed the *Quitclaim Deed*.   Len did not testify to the contrary in the trial leading to the *Homestead Decision*.   He wasn't asked.

The judgment creditors assert that Len's new testimony contradicted the recitations in the *Quitclaim Deed* that the transfer was "for good consideration and for the sum of $100.00 paid by [Max], the receipt whereof is hereby acknowledged."   Any failure of Max to pay Len $100.00 at the time Len executed the *Quitclaim Deed* would not alter the finding in the *Homestead Decision* that Max provided valuable consideration for the transfer.   A recitation of a nominal amount of cash paid in exchange for a deed is commonplace, and it is likely equally commonplace that often the consideration is something different, with no cash paid.   If Max did not pay $100 at closing that does

---

[24]   The judgment creditors complain that Max failed to produce documents requested in discovery documenting the expenses he paid related to the Property, but that could have been raised at the trial.   As noted previously, Rule 60(b) may not be used to raise arguments that could have been made at trial.

not alter the finding in the *Homestead Decision* that Len received
valuable consideration based on Property expenses for which Len
was liable and that Max agreed to continue paying, and based on
Max's agreement to attempt to refinance the Property to eliminate
Len as a mortgagor.[25]   When he executed the *Quitclaim Deed*, Len
*had* received "good consideration" for the transfer as recited by
the *Quitclaim Deed*.

Moreover, the *Irrevocable Trust Agreement* executed on July
6, 2010, purported to create a trust named the 1610 Riggs
Property Trust ("the Trust"), and recites that the Grantor (Len)
"desiring to create a trust for the benefit of his father and **for
other good and valuable consideration**, irrevocably assignees
[sic] to the Trustee the [Property], in trust, for the purposes

---

[25]   As noted previously, the *Homestead Decision* recited:

> Additionally, while the mortgage was in Len's name, Max
> made all payments on the mortgage, and there was an
> agreement between Len and Max that Max would take Len's
> name off the mortgage when Max was able to refinance the
> Property on his own credit.   Moreover, Max paid all
> bills, taxes, and other expenses related to the Property,
> and maintained and kept up the Property. Len put no
> investment into the Property, and got more out of the
> Property than he put into it.   **Accordingly, the court
> finds that there was valuable consideration.**

(Emphasis added.)   Again, the recitation that Max paid all of the
expenses did not mean that each and every bill (such as a monthly
mortgage payment obligation that came due) was paid, only that it
was Max that made all such payments that were made, not Len.

and on the conditions hereinafter stated" (emphasis added), thus strengthening the conclusion that the parties were of the view that there had been consideration for the transfer.[26]

## C.

### RULE 60(b)(6)

The judgment creditors also rely on Rule 60(b)(6) in seeking relief from the *Homestead Decision*. A party "must clear a very high bar to obtain relief under Rule 60(b)(6)." *Kramer v. Gates*, 481 F.3d 788, 792 (D.C. Cir. 2007). Rule 60(b)(6) relief is unavailable here.

First, as stated in *Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.*, 810 F.2d 243, 249 (D.C. Cir. 1987):

> Rule 60(b)(6) permits a court to grant relief from a final judgment for "any *other* reason justifying relief . . . ." (Emphasis added.) The courts have universally interpreted "other" to mean other than the reasons specified in subsections 60(b)(1)–60(b)(5), and it is generally accepted that cases clearly falling under Rule 60(b)(1) cannot be brought within the more generous Rule 60(b)(6) in order to escape the former's one year time limitation.

---

[26] The *Irrevocable Trust Agreement* named Max as the sole trustee and the sole beneficiary of the Trust and makes clear Len's intent to grant Max complete authority regarding management of the Property and the sole right to enjoy income generated by the Property, with, for example, the right to sell or encumber the Property. Even though the trust failed for technical reasons, the *Irrevocable Trust Agreement* makes clear that Len and Max viewed the transfer of the Property to Max was for "good and valuable consideration."

(Citations omitted.)[27]   Therefore, because the *Motion for Reconsideration* could be brought under Rule 60(b)(1) and Rule 60(b)(2), Rule 60(b)(6) does not apply.

Second, "[t]he Supreme Court has noted that courts should grant Rule 60(b)(6) motions only in 'extraordinary circumstances.'" *Kramer v. Gates*, 481 F.3d at 791 (quoting *Ackermann v. United States*, 340 U.S. 193, 199 (1950)).  "A litigant's diligence in pursuing review of a decision, either through appeal or through Rule 60(b)(6) relief, is relevant in assessing whether extraordinary circumstances are present." *Salazar ex rel. Salazar v. D.C.*, 633 F.3d 1110, 1118-19 (D.C. Cir. 2011), citing *Gonzalez v. Crosby*, 545 U.S. 524, 537 (2005).

The judgment creditors have not shown extraordinary circumstances here.  The three transcripts at issue here do not show that the *Homestead Decision* was manifestly unjust, warranting Rule 60(b)(6) relief.  Thus, this is not a case like *Good Luck Nursing*, 636 F.2d at 577, upon which the judgment creditors rely.  Here, the three transcripts did not contain previously undisclosed evidence that was, as in *Good Luck Nursing*, "so central to the litigation that [it] show[s] the

---

[27]   *See also Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 862 (1988); *Goland*, 607 F.2d at 372-73; *United States v. Fernandez*, 797 F.3d at 319 (holding that "an action cannot be brought through the catch-all provision of Rule 60(b)(6) if it could have been brought through one of the Rule's first five subsections.").

initial judgment to have been manifestly unjust." *Id.*[28]   Just as

the three transcripts do not show error in the *Homestead Decision*

for purposes of Rule 60(b)(2), they do not show error for

purposes of Rule 60(b)(6).   Because the *Homestead Decision* was

not based on a "fundamental misconception of the facts[,]" as in

*Good Luck Nursing*, 636 F.2d at 576, Rule 60(b)(6) relief from the

*Homestead Decision* is not warranted.

Moreover, much of the *Motion for Reconsideration* merely

advances arguments of error in the *Homestead Decision*, but Rule

60(b) may not be used as a substitute for appeal.   *See Salazar*,

633 F.3d at 1122; *Bell v. Eastman Kodak Co.*, 214 F.3d 798, 800

(7th Cir. 2000) ("The ground for setting aside a judgment under

Rule 60(b) must be something that could not have been used to

obtain a reversal by means of a direct appeal.").   In rehashing

the trial evidence and arguments at trial, the judgment creditors

have impermissibly attempted to use their Rule 60(b)(6) request

as an attempt to re-litigate the merits of the *Homestead*

*Decision*, matters that should have been pursued via appeal.   *See*

*People for the Ethical Treatment of Animals v. United States*

---

[28]   *In Salazar*, 633 F.3d 1121, the Court of Appeals noted
that there is a question, which it declined to decide, " whether
the rule of *Good Luck Nursing Home . . .* survives the Supreme
Court's decision in *Gonzalez* emphasizing that a 'lack of
diligence' effectively precludes a finding of 'extraordinary
circumstance.   545 U.S. at 537."   Here, too, it is unnecessary to
decide that question.

*Dep't of Health & Human Servs.*, 901 F.3d 343, 356 (D.C. Cir. 2018).  Generally, Rule 60(b) relief based on a mistake of the court and sought after the time to appeal has expired is unavailable if the movant failed to file a timely appeal.  *See Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 216, 228 (D.D.C. 2011); *Morris v. Adams-Millis Corp.*, 758 F.2d 1352, 1358 (10th Cir. 1985) ("[A] mistake of law cannot be reached under 60(b)(1) where no notice of appeal was timely filed from the order in which the mistake is alleged to have occurred, and the time for filing such a notice of appeal had expired when the 60(b) motion was filed.  A contrary rule would permit a 60(b) motion to serve as an appeal, which would be untimely otherwise.").  The judgment creditors took a timely appeal, but they have allowed their appeal to be dismissed, without seeking amendment of the *Order* dismissing the appeal or taking an appeal from that *Order*.

As in the case of failing timely to take an appeal, the dismissal of the appeal here bars Rule 60(b) relief based on a mistake of the court.  *See Salazar*, 633 F.3d at 1122 (holding that Rule 60(b)(6) relief was inappropriate when the appellant had made a considered choice to dismiss its appeal and resorted instead to a Rule 60(b)(6) motion); *Eskridge v. Cook Cty.*, 577 F.3d 806, 809 (7th Cir. 2009) (voluntarily dismissing appeal was a "mistake of law" not justifying Rule 60(b)(1) relief); *In re*

*Pettle*, 410 F.3d 189, 192 (5th Cir. 2005) (a party who voluntarily requested dismissal of a claim was not entitled to Rule 60(b) relief from the judgment dismissing the action).

Rule 60(b)(6) "may not 'be employed simply to rescue a litigant from strategic choices that later turn out to be improvident.'" *Kramer v. Gates*, 481 F.3d at 792 (quoting *Good Luck Nursing*, 636 F.2d at 577). As noted in *Kramer*, *id.*, "the Supreme Court has held that 'extraordinary circumstances' are not present when in hindsight it appears certain that an appeal, which was not taken, would have been successful, *Ackermann*, 340 U.S. at 197–99 . . ." Here, the judgment creditors neglected to preserve their appellate rights, and errors in the *Homestead Decision* cannot be attacked instead via a Rule 60(b)(6) motion.

Similarly, the judgment creditors are not entitled to Rule 60(b)(6) relief on the basis that their attorney mistakenly took the view that Rule 60(b) relief could not be sought while the appeal was pending, thus leading to the delay in filing the *Motion for Reconsideration* and making it untimely. As noted in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 392 (1993), "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute

'excusable' neglect."[29]    Here, Fed. R. Bankr. P. 8008(a) made

clear that a Rule 60(b) motion could be timely filed in the

Bankruptcy Court despite the pendency of the appeal.    Any error

in failing to understand that clear and unambiguous rule is not a

basis for Rule 60(b)(6) relief.    *See Jarvis v. Parker*, 13 F.

Supp. 3d 74, 80 (D.D.C. 2014) ("This case . . . represents

garden-variety attorney error.    To premise relief under Rule

60(b)(6) on such a basis would do violence to the Supreme Court

and D.C. Circuit's instructions that this provision should be

"sparingly used."  *Kramer*, 481 F.3d at 792.").    This approach

applies to Rule 60(b) in general.    *See S.E.C. v. Bilzerian*, 729

F. Supp. 2d 9, 18 (D.D.C. 2010), citing  *Edward H. Bohlin Co. v.

Banning Co.*, 6 F.3d 350, 356-57 (5th Cir. 1993) ("A court would

abuse its discretion if it were to reopen a case under Rule

60(b)(1) when the reason asserted as justifying relief is one

attributable solely to counsel's carelessness with or

misapprehension of the law."), and *Kagan v. Caterpillar Tractor

Co.*, 795 F.2d 601, 607 (7th Cir. 1986) ("Neither ignorance nor

carelessness on the part of the litigant or his attorney provide

---

[29]    Moreover, as discussed previously, the judgment
creditors' delay was not just during the pendency of the *Motion
to Supplement or Remand* in the District Court.    After the
*Homestead Decision* was entered, eight months passed (from
September 25, 2018, to May 13, 2019) before the judgment
creditors filed their *Motion to Supplement or Remand*.    Then after
the District Court entered its *Order* dismissing the appeal,
another 64 days elapsed before the judgment creditors filed their
*Motion for Reconsideration*.

grounds for relief under Rule 60(b)(1)." *See also Eskridge*, 577 F.3d at 809 ("mistake of law" did not justify Rule 60(b)(1) relief); *McCurry v. Adventist Health Sys./Sunbelt*, 298 F.3d 586, 592 (6th Cir. 2002) ("neither strategic miscalculation nor counsel's misinterpretation of the law warrants relief from judgment.").

Finally, the Rule 60(b) motion in *Good Hope* "was made within three months of the original judgment," 636 F.2d at 578, whereas here the judgment creditors' *Motion for Reconsideration* was filed seventeen months after entry of the *Homestead Decision*.  The lack of diligence weighs heavily against finding extraordinary circumstances.  *Gonzalez,* 545 U.S. at 537.

X

THE MOTION FOR RECONSIDERATION CANNOT
SUCCEED AS AN INDEPENDENT ACTION UNDER RULE 60(d)(1)

If it is treated as an independent action under Fed. R. Civ. P. 60(d)(1), the *Motion for Reconsideration* fails to show an entitlement to relief as such.  As noted in *Travelers Indem. Co. v. Gore*, 761 F.2d 1549, 1552 (11th Cir. 1985), a party "cannot use an independent action as a vehicle for the relitigation of issues."  Instead, an independent action must meet a stringent and demanding standard.

 As noted in *Sieverding v. Am. Bar Ass'n*, 439 F. Supp. 2d 111, 114 n.1 (D.D.C. 2006):

An independent action, also known as an original action,

> is a proceeding that sounds in equity and "is available
> only to prevent a grave miscarriage of justice." *United
> States v. Beggerly*, 524 U.S. 38, 45, 47, 118 S.Ct. 1862,
> 141 L.Ed.2d 32 (1998).  A party bringing an independent
> action must show that: (1) the judgment should not, in
> equity and good conscience, be enforced; (2) a good defense
> exists; (3) fraud, accident, or mistake prevented him from
> obtaining the benefit of his defense; (4) the absence of
> fault or negligence on his part; and (5) the absence of any
> adequate remedy at law.  *Bankers Mortgage Co. v. United
> States*, 423 F.2d 73, 79 (5th Cir. 1970), cert. denied, 399
> U.S. 927, 90 S.Ct. 2242, 26 L.Ed.2d 793 (1970).

Here, the *Motion for Reconsideration* fails the five-element test of *Bankers Mortgage*, and there has not been a "grave miscarriage of justice."  As noted in *Bankers Mortgage*, 423 F.2d at 79, "[c]ourts have consistently held that a party is precluded by res judicata from relitigation in the independent equitable action issues that were open to litigation in the former action where he had a fair opportunity to make his claim or defense in that action." (Citations omitted.)  Here, the judgment creditors have had adequate remedies at law, specifically, a fair opportunity to advance their position regarding the homestead exemption via their appeal to challenge any error in the *Homestead Decision* and

via seeking relief under Rule 60(b).[30]   That those adequate

remedies at law are no longer available (because the judgment

creditors' appeal has been dismissed without the judgment

creditors seeking to modify the *Order* dismissing their appeal and

because the judgment creditors failed timely to seek Rule 60(b)

relief) is due to the judgment creditors' own neglect.   In equity

and good conscience, the *Homestead Decision* is appropriately

binding on them as a matter of res judicata.   In any event, the

judgment creditors have failed to demonstrate a valid defense to

the homestead exemption.   There has not been a "grave miscarriage

---

[30]   As noted in *Matthew v. United States*, No.
3:06-CR-16-RJC-CH-1, 2018 WL 3040027, at *2 (W.D.N.C. June 19,
2018):

> A party cannot use an independent action to re-litigate
> issues that were open to litigation in the former action
> where he had a fair opportunity to make his claim or
> defense. *Sinesterra v. Roy*, 347 Fed. Appx. 9, 10 (5th
> Cir. 2009). This requires a showing by the aggrieved
> party that "there was no opportunity to have the ground
> now relied upon to set aside the judgment fully litigated
> in the original action." *Gleason v. Jandrucko*, 860 F.2d
> 556, 560 (2d Cir. 1988).

*See also Hoti Enters., L.P. v. GECMC 2007 C-1 Burnett St., LLC*, 549
F. App'x 43, 44 (2d Cir. 2014) (emphasizing that the "failure to
raise a fraud claim within one year under Rule 60(b)(3) precludes
a litigant from alleging that the same fraud entitles it to
equitable relief [under Rule 60(d)(1)] absent extraordinary
circumstances"); *Campaniello Imports, Ltd. v. Saporiti Italia
S.p.A.*, 117 F.3d 655, 662–63 (2d Cir. 1997) ("Having failed to take
advantage of the adequate remedy at law offered by Rule 60(b)(3),
appellants may not now seek relief in equity.").

of justice" as required by *Beggerly* to grant relief via an

independent action.

XI

CONCLUSION

Based on the foregoing, it is

ORDERED that the *Motion for Reconsideration* (Dkt. No. 321) is

DENIED.

[Signed and dated above.]

Copies to: E-recipients of filings.